GEORGE MUMFORD, Respondent, *v.* DICKERT AND
MYERS SULPHUR COMPANY, Appellant.

Sale—Correspondence with Sample—Finding.—Where there was
evidence tending to show that in an action for the price of brick
delivered, the pile of rejected brick had been examined, and that
over half the pile was of the quality of the examined brick, and
two of the bricks from the rejected pile were produced in court,
and found to be of the quality of brick to be delivered; *held*, that
a finding of the trial court that half of the rejected pile were of
the quality agreed to be delivered, is not so clearly unwarranted
by the evidence, as to demand a reversal of the judgment on
the ground that the evidence was insufficient to support the
finding.

Id.—Quantity Delivered.—Evidence of receipts given by the appel-
lant to the respondent's teamsters, showing the number of brick
delivered, is admissible in evidence, where the quantity of brick
delivered is in dispute, and evidence offered by defendant to ex-
plain the receipts as not being an acceptance where the contro-
versy is simply over the number of brick delivered.

Id.—Evidence.—In an action for price of brick delivered, after tes-
timony as to the number of brick delivered, it is competent for
plaintiff to testify that shortly before the trial, he, in company
with another person, went to appellant's premises for the purpose
of examining the rejected brick, and was driven away by defend-
ant's agent, and was refused the privilege of further examining
said bricks.

APPEAL from a judgment of the district court of the
second district. The opinion states the facts.

*Mr. Charles W. Zane*, and *Messrs. Hall & Marshall*,
for appellant.

*Mr. Presley Denny*, for respondent.

Henderson, J.:

This cause was brought in justice's court by respondent
for a balance claimed to be due on a contract for the de-
livery of brick. The defendant, in its answer, claimed
that 4,500 of the brick claimed to have been delivered
by the plaintiff were not of the quality agreed to be de-
livered, and were utterly worthless; alleged a tender of $31,

and accompanied its answer with that amount paid into court. Judgment was rendered on trial in justice's court in favor of plaintiff for the amount claimed, and defendant appealed to the district court, where the case was again tried, before the court without a jury, and a judgment again rendered in favor of the plaintiff for $69.18, being part of plaintiff's claim. The district judge found as facts that on the 25th of September, 1886, the parties entered into an agreement by which the plaintiff was to deliver to defendant at its sulphur works about 40,000 "good and suitable brick, or such number as the defendant might desire or need, at $15 per thousand;" that, in accordance therewith, the plaintiff delivered 33,059 brick; that 30,726 thereof were "of the quality agreed to, be delivered, and that 2,333 were not of such quality;" that plaintiff had received thereon $371.70; that there was still due plaintiff $69.18, and gave judgment for that amount. A bill of exceptions was settled, embodying the testimony; and the case comes to us on appeal from the judgment, and it is claimed that the evidence was insufficient to support the finding that the brick were to be "good and suitable," and "that 30,726 were of the quality agreed to be delivered."

We deem it unnecessary to quote from the testimony at length. We have examined it carefully, and think that there was evidence to support the findings. Before the contract in controversy was made, the parties had been dealing for some time. At least two full consignments of brick had been made, received, accepted, and paid for in full; and then a further order was given, being the one in controversy. We think it a fair deduction from the evidence that the contract were to deliver to defendant at its works, at $15 per thousand—a price above the usual price—such brick as were suitable for the defendant's use in constructing its refining works, to be determined by comparison with the samples agreed upon, and the standards recognized, accepted, and adopted by both the parties in the previous dealings. As to the claim that the evidence does not support the finding "that 30,726 were of the quality agreed to be delivered," the testimony shows that the en-

tire controversy in this case was over 4,666 brick which were rejected by defendant. There was no dispute about the whole number of brick delivered at defendant's works; but upon examination and assortment of some of the loads delivered, defendant's agents rejected some of them, and other loads were rejected entirely without examination, except such as could be made by looking at the load. All these brick so rejected were piled up in one pile, and numbered 4,666, and the controversy was over these rejected brick. The plaintiff testified that he had examined this pile of brick, and had selected two brick from it, which he exhibited on the trial, as brick that were up to the standard of what he was to furnish; and he testified respecting these samples, and the rejected pile, as follows: "When I was out the other day, I saw this pile of brick. I took out two as samples—these two. They are good brick. There is over half of that pile—I think more than half —of the kind of brick as these two." And his witness Pearson testified: "About half of the pile were of the quality of these two." The defendant also exhibited in court samples which he testified were the samples agreed upon, and were correct samples of what the brick were to be. The trial judge could determine from inspection of these samples how much or how little they varied; and there was positive testimony that half of the rejected pile was equal to the samples selected from it. In view of this testimony we are not prepared to say that the district judge was not warranted in finding that half of the rejected pile were such brick as were agreed to be delivered. It will be observed that judgment was rendered only for the contract price of the brick the court found to be of the quality agreed upon, which included half of the rejected pile.

The appellant also complains of the ruling of the district court in excluding evidence offered to explain receipts given by it to the teamsters for the amount of brick delivered. These receipts were put in evidence by the plaintiff, for the purpose of showing the number of brick hauled to defendant's works, and plaintiff also claimed that they were evidence of acceptance by the defendant. The de-

fendant offered testimony to explain that the defendant did not intend by them to receive and accept the brick.  By the finding of the court, this was rendered wholly immaterial.  The court did not regard the brick thus delivered as accepted.  The theory of the findings is that the brick was subject to inspection and rejection after delivery at defendant's works, and defendant was allowed to reject all that did not come up to the contract standard.  The court found in favor of defendant upon the subject of acceptance, and therefore the defendant could not have been injured by the rejection of this testimony.

The plaintiff was allowed to testify, against the objection of the defendant, that, a short time before the trial, the plaintiff with another person went to defendant's premises, where the rejected brick were piled in an open yard, and was examining them, when one of defendant's agents, and one who was a material witness on the trial for defendant, came out, and drove them away, and refused to let them further examine the brick, upon the pretense that plaintiff had not first asked permission at the office; and this is assigned as error.  We think the evidence was proper.  It was a fair question as to whether the agent was acting in good faith, or was seeking to deprive the plaintiff of the privilege of making examination of the brick in preparation for the trial, and was proper to be used in determining the weight to be given to the agent's testimony, if for no other purpose.  The judgment of the district court should be affirmed.

ZANE, C. J., and BOREMAN, J., concurred.