## UNITED STATES OF AMERICA, RESPONDENT, *v.* JOSEPH CLARK, APPELLANT.

CRIMINAL LAW—UNLAWFUL COHABITATION—SUFFICIENCY OF EVIDENCE.—Under Section 3 of Edmunds Law, 22 Stat. 31, a man who has two wives, a legal and plural wife, both living within the jurisdiction of the Court, both bearing his name and known as his wives, is guilty of unlawful cohabitation, even though he deserts the lawful wife, and cohabits exclusively with the plural wife.

ID.—ID.—PRESUMPTION AS TO LAWFUL WIFE.—A man whose lawful wife is living within the jurisdiction of the Court, bearing his name and known as his wife, is conclusively presumed to cohabit with her; overruling, U. S. v. Smith, 5 Utah 232; U. S. v. Harris, 5 Utah 436; U. S. v. Clark, 5 Utah 226.

ID.—ID.—EDMUNDS LAWS—LEGISLATIVE CONSTRUCTION.—The fact that Congress in the Edmunds Law, 22 Stat. 31, defines "unlawful cohabitation," where there was no law forbidding adultery, and afterwards in the Edmunds-Tucker Law, 24 Stat. 635, defined the crime of adultery, was not a legislative construction that actual cohabitation with both wives was necessary to the crime of unlawful cohabitation.

APPEAL from an order refusing a new trial and from a judgment of conviction of the district court of the first district. The opinion states the facts.

*Mr. Samuel R. Thurman* (with whom were *Mr. George Sutherland* and *Messrs. Sheeks* and *Rawlins* on the brief) for the appellant.

Cohabitation between husband and wife is a question of fact. It is not conclusively presumed from lawful marriage. It is only an incident, not an essential.

*Murphy* v. *Ramsey*, 114 U. S. 13.

Cohabitation may cease between husband and wife and in some cases it will not be renewed even by acts of sexual intercourse between the parties.

Stewart on Marriage and Divorce, Sec. 252.

87 Ill., 250, 254.

If positive acts of sexual intercourse between husband and wife under certain conditions is not conclusive evidence of cohabitation, *a fortiori*, a casual visit on business not characteristic of the marriage relation under similar conditions, is not conclusive.

The defendant had not lived or cohabited with Sarah for three years. This fact the Court concedes in its decision overruling the motion for a new trial.

See Bill of Exceptions.

The matrimonial offense of desertion is defined to be wrongfully and wilfully *ceasing to cohabit.*

Bishop's Marriage and Divorce, Vol. I, 777–811.

A test question in this case would seem to be: Would Sarah Clark be entitled to a divorce on the grounds of desertion upon a proper application in the Court of competent jurisdiction? If she would then there was no cohabitation, because desertion and cohabitation cannot exist in the same case at the same time. It cannot be doubted that the cohabitation which is essential to guilt under the "Edmunds Law" is simply matrimonial cohabitation as defined in various treatises on the relation of husband and wife. This being true, the question whether or not desertion exists in a given case is certainly an infallible test as to the existence or non-existence of cohabitation, for one is the converse of the other, and where it exists the other does not. His continuity of desertion is not broken except by a renewal of cohabi-

tation. It is not broken by a casual meeting, a casual call on business, or, as we said before, it is not necessarily broken by an act of sexual intercourse itself. The act or acts to have that effect must be coupled with the intention to renew cohabitation. Then and not until then will the continuity of the desertion be broken.

And appellant cited *U. S.* v. *Snow*, 4 Utah, 280, 295, 313; *U. S.* v. *Clark*, 5 Utah, 226; *U. S.* v. *Harris*, 5 Utah, 436; *U. S.* v. *Smith*, 5 Utah, 232.

*Mr. George S. Peters*, U. S. District Attorney, and *Mr. David Evans*, Assistant U. S. District Attorney, for the respondent.

HENDERSON, J.:

The defendant was convicted of unlawful cohabitation, in the first district court, under section 3, 22 St. 31, known as the " Edmunds Law," and appeals to this court. The record contains an agreed statement of facts from which it appears that the defendant married Sarah Clark over thirty years ago; that she thereby became and still is his lawful wife; that in 1852 he married another woman, named Hannah Clark, and that in September, 1868, he married a third woman, named Francis Clark; that defendant has not lived with the second wife, Hannah, for some years past, but that during the time covered by the indictment he has lived and cohabited with the third wife, Francis Clark; that all of said women have resided at Provo, in the first judicial district, during all the time since their marriages, respectively, and still reside there; that they live in separate houses, the first wife, Sarah, living in one house, together with children of herself and defendant. Sarah, the lawful wife, has sworn and testified that the defendant abandoned and deserted her without her consent, about three years ago, and before the time covered by the indictment, and had not lived with her since, and had only called at her house once or twice within the time covered by the indictment. The court charged the jury among other things, as follows: "The facts seem to show that about thirty-nine years ago this defendant

married a woman in the Territory of Utah by the name of Sarah Clark; that about 1852 or 1853 he married another woman by the name of Hannah Clark; that about the twenty-sixth of September, 1868, he married a third, a woman by the name of Francis Clark; that he has not lived with Hannah for some years past,—may be eight or ten years. It is here insisted by counsel for the defense that he has not lived or cohabited for the last three years with the lawful wife, Sarah, but that he has abandoned her as his wife. It appears, further, from the proof, that within the time covered by this indictment he has lived and cohabited with the third wife, Frances Clark. Now, upon this statement of facts, if you find them to be the facts and true, the Court charges you the law in so many words to be this: that, if he lived and cohabited with Sarah Clark, and at the same time lived and cohabited with Francis Clark as his wife, he would be guilty. If he lived and cohabited with Francis as his wife, and visited Sarah, the law presumes, and will not allow him to say on the trial, that these visits were not as a husband, and would be sufficient to establish cohabitation with the legal wife, Sarah. And, gentlemen of the jury, the Court is of opinion, and I also instruct you, that if the proof shall show that, in 1850, thirty-nine years ago, he married Sarah and that she from that time up to now was and is his lawful, living wife, and undivorced, and that, in that condition of things, lived and cohabited with a plural wife, Francis Clark, that he would be guilty. The Court is of opinion, and so charges you, that a man should have but one wife, and that should be his lawful wife, and that he should live and cohabit with her, and that it would be an evasion of the law to say that I have abandoned my lawful wife, and therefore I am not guilty, because I am cohabiting with one woman. The Court believes congress did not intend any such thing in the passage of the law, and instructs you that if the lawful wife, Sarah, was still living and undivorced, and in that condition he goes and lives and cohabits with Francis, he must be guilty, and the law will not allow him to say that he has abandoned his lawful wife, and cohabits with but one woman."

This instruction is alleged to be erroneous. This record presents the single question, as to whether a polygamist whose wives, both the lawful and the plural, are living within the jurisdiction of the court, both bearing his name and known as his wives, is guilty of violating the act of congress above referred to when he lives exclusively with the plural wife, and deserts the lawful one. It is contended by the defendant that the statute only prohibits a man from cohabiting with more than one woman; that, being a penal statute, it should be strictly construed; and that, therefore, actual cohabitation must be shown both with the plural and legal wives. On the part of the government it is contended that, when it is shown that one of the women whom he is charged to have cohabited with is his legal wife; that she is living within the jurisdiction of the court, bearing his name, and known as his wife, —that he is conclusively presumed to cohabit with her, within the meaning of the statute; that the statute does not make it necessary and that it was not intended by it to tolerate the inquiry as to whether the party charged actually cohabited with his legal wife. This statute has been several times before the court for construction, but the precise question here presented has never been determined. In the case of *U. S.* v. *Cannon*, 116 U. S. 55, 6 Sup. Ct. Rep. 286, the defendant was charged with unlawful cohabitation with two women, both of whom were plural wives, and of course it was necessary to show actual cohabitation, within the meaning of the statute, with both. The defendant contended that cohabitation, within the meaning of the statute, meant sexual intercourse; and the Court, referring to this claim on the part of the defendant, and construing the statute, said: "But we are of opinion that this is not the proper interpretation of the statute, and that the Court properly charged the jury that the defendant was to be found guilty if he lived in the same house with the two women, and ate at their respective tables, one-third of his time, or thereabouts, and held them out to the world by his language or conduct, or both, as his wives; and that it was not necessary it should be shown that he and the two women, or either of them, occupied the same bed, or slept

in the same room, or that he had sexual intercourse with either of them. This interpretation is deducible from the language of the statute throughout. It refers wholly to the relations between men and women founded on the existence of actual marriages. * * * It is the practice of unlawful cohabitation with more than one woman that is aimed at,—a cohabitation classed with polygamy, and having its outward semblance. It is not, on the one hand, meretricious, unmarital intercourse with more than one woman. General legislation as to lewd practices is left to the territorial government. Nor, on the other hand, does the statute pry into the intimacies of the marriage relation, but it seeks, not only to punish bigamy and polygamy when direct proof of the existence of those relations can be made, but to prevent a man from flaunting in the face of the world the ostentation and opportunities of a bigamous household, with all the outward appearances of the continuance of the same relations which existed before the act was passed, and without reference to what may occur in the privacy of those relations. Compacts for sexual non-intercourse, easily made and as easily broken, when the prior marriage relations continue to exist, with the occupation of the same house and table, and the keeping up of the same family unity, is not a lawful substitute for the monogamous family, which alone the statute tolerates."

In various cases in this court, it has been held that cohabitation with the legal wife is presumed, but that such presumption is one of fact, and can be rebutted, and is to be given such weight, and only such weight, as the jury think it ought to have under the circumstances of the particular case. *U. S.* v. *Snow*, 4 Utah, 295, 9 Pac. Rep. 501; Id. 686: *U. S.* v. *Smith*, 5 Utah, 273, 14 Pac. Rep. 292; *U. S.* v. *Harris*, 5 Utah, 476, 17 Pac. Rep. 75. These cases have been followed by the district courts, and this presumption, together with the presumption of innocence, have been submitted to the jury, for them to find a verdict as they should give more or less weight to these contending and conflicting presumptions It will readily be seen that the rule contended for by the

defendant in this case would permit a polygamist, upon the discontinuance of the practice of polygamy, which this statute is intended to enforce, to select the plural wife, and discard the lawful one,—thereby placing the two on terms of absolute equality, and to that extent giving the same force and effect to their respective marriages, and leaves the first wife to struggle on equal terms with the plural for the possession of her husband,— a contest in which she has already lost. If, as the supreme court of the United States have said ( *U. S.* v. *Cannon, supra,*) the statute under which this prosecution is brought is to be construed with reference to the balance of the act and other legislation upon the same subject, and that in a contest between monogamous and polygamous practices it is to be construed as the intervention of the government in favor of the former, we would naturally seek a construction consistent with this idea, and one that would furnish some protection to the monogamous home, which alone the statute tolerates, and one which would not defeat the object which congress had in view in passing this statute. Suppose the defendant in this case should desire to return to his wife and home, and he should do so, and the next day, at the instance of the plural wife, he should be arrested for the violation of this statute. He could not escape conviction. According to the contention of the defendant, he would be guiltless if he remained with the plural wife, and the essential element of the crime would be found in the fact that he had returned to his lawful wife,—just what the courts have been holding it was his duty to do, and that there is a presumption to that effect, because it is his duty. But it is contended that the statute of 1887, providing a punishment for the crime of adultery, is a legislative construction in favor of the defendant's claim, and was intended to apply to those who leave their lawful wives and cohabit with a plural wife. But "cohabitation," within the meaning of the statute, is not necessarily sexual intercourse, as already shown; and a man may cohabit with a plural wife, and still not be liable to punishment under the law of 1887. This latter statute, providing a punishment for the crime of adultery, was en-

acted because the milder measures of 1862 and 1882 had proved ineffectual to stop the practice of begetting illegitimate children, and was intended as a still further protection to the monogamous home and lawful marital rights.

Counsel contended that, if congress had intended to have the act construed as contended by counsel for the government, it might have said: "Whoever, having a lawful wife alive, cohabits with another woman, or whoever cohabits with a woman other than his lawful wife, while she is living." True, it might have done so, but that would not have accomplished what was intended. It might happen, as in the Cannon Case, *supra*, that both of the women with whom defendant is charged to have cohabited are plural and illegal wives. In that case, actual cohabitation in fact must be shown, but, if one is the lawful and the other an unlawful wife, then the essential element of guilt is the latter. Congress was aiming at the plural marriage relation, and, as said in the Cannon Case, "it refers wholly to the relations between men and women founded on the existence of actual marriages, or on the holding out of their existence." In this case Sarah Clark is the lawful wife of the defendant. He is the legal head of the family, composed of his wife and their children. Could this *status* be added to or made more binding by proof that he had been with them occasionally? Or could the defendant detract from it by showing that he had violated his duty, and deserted them? We think not. When the defendant left his wife and their children,—bearing his name, known as such,—and lived with Francis, as his wife, he became the head of two families,—"a household and a family twice repeated." The law fixes and declares his *status* as to the one, and his own act has fixed it as to the other. We think that when a polygamist has a lawful wife living within the jurisdiction of the court, known and understood to be such, and lives and cohabits with another woman as his wife, he is guilty of a violation of the statute; that the presumption that he cohabits with the legal wife is a legal one, and is conclusive, if it is a presumption at all. His *status* in relation to each of the two women, in our opinion, is such that, as a matter of law, he cohabits with them within the

meaning of the statute. The judgment of the court below should be affirmed.

BOREMAN, J., concurred, SANDFORD, C. J., dissented. But no dissenting opinion was ever filed.